IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DARRYL KIRKSEY,
        Petitioner,

vs.                                    Case No.:  4:15cv444/RH/EMT

JULIE JONES,
        Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus
filed pursuant to 28 U.S.C. § 2254 (ECF No. 1).  Respondent filed an answer and
relevant portions of the state court record (ECF No. 32).  Petitioner filed a reply (ECF
No. 34).

The case was referred to the undersigned for the issuance of all preliminary
orders and any recommendations to the district court regarding dispositive matters.
*See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ.
P. 72(b).  After careful consideration of all issues raised by the parties, it is the
opinion of the undersigned that no evidentiary hearing is required for the disposition
of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show

that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established

by the state court record (*see* ECF No. 32).[1]  Petitioner was charged in the Circuit

Court in and for Leon County, Florida, Case No. 2010-CF-2817, with one count of

burglary of a dwelling with a person battered and/or assaulted and while armed with

a firearm (Count I), one count of possession of a firearm by a convicted felon (Count

II), and one count of misdemeanor battery (Count III) (Ex. A at 8).  The firearm

possession count was severed from the burglary and battery counts (*see id.* at 105,

107).  A jury trial was held on April 18, 2012, on the burglary and battery counts (Exs.

B, C).  The jury found Petitioner guilty of burglary of a dwelling with a person

battered and/or assaulted, but the jury found that Petitioner did not actually possess

a firearm during commission of the burglary (Ex. A at 60–61).  The jury also found

Petitioner guilty of battery as charged (*id.*).  At sentencing, the prosecutor announced

a nolle prosequi on the severed firearm possession count (*id.* at 107).  Additionally,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 32).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

upon motion by defense counsel, the court vacated the battery conviction on double jeopardy grounds (*id.* at 105). The court sentenced Petitioner as a prison releasee reoffender to life imprisonment on the burglary of a dwelling with a person battered and/or assaulted count (*id.* at 64–74, 81–114).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D12-2791 (Ex. E). The First DCA affirmed the judgment per curiam without written opinion on April 1, 2013, with the mandate issuing April 17, 2013 (Exs. G, H). Kirksey v. State, 109 So. 3d 786 (Fla. 1st DCA 2013) (Table).

On May 17, 2013, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 1–11). The state circuit court held an evidentiary hearing on Petitioner's claims (*id.* at 29–78). At the conclusion of the hearing, the court denied the Rule 3.850 motion (*id.* at 24, 70–77). Petitioner appealed the decision to the First DCA, Case No. 1D13-5294 (Ex. J). The First DCA affirmed the decision per curiam without written opinion on April 17, 2015, with the mandate issuing June 12, 2015 (Exs. M, N). Kirksey v. State, 166 So. 3d 772 (Fla. 1st DCA 2015) (Table).

On October 30, 2014, during the pendency of the Rule 3.850 proceeding, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D14-5098, alleging ineffective assistance of appellate counsel (Ex. O). The First DCA denied the petition on the merits on November 25, 2014, and denied Petitioner's motion for rehearing on January 22, 2015 (*id*.). Kirksey v. State, 152 So. 3d 97 (Fla. 1st DCA 2014) (Mem).

Petitioner filed the instant federal habeas action on September 3, 2015 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)**  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies

the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175

L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L.

Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for

purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this

Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines

whether the state court adjudication is contrary to the clearly established Supreme

Court case law.  The adjudication is not contrary to Supreme Court precedent merely

because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only

if either the reasoning or the result contradicts the relevant Supreme Court cases.

Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding

th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does

not even require awareness of our cases, so long as neither the reasoning nor the result

of the state-court decision contradicts them.").  Where there is no Supreme Court

precedent on point, the state court's conclusion cannot be contrary to clearly

established federal law.  See Woods, 135 S. Ct. at 1377 (holding, as to claim that

counsel was per se ineffective in being absent from the courtroom for ten minutes

during testimony concerning other defendants:  "Because none of our cases confront

the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review

of the merits of the petitioner's claims.  *See* Panetti, 551 U.S. at 954.  Even then, the

writ will not issue unless the petitioner shows that he is in custody "in violation of the

Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this

standard is difficult to meet, that is because it was meant to be."  Richter, 562 U.S. at

102.

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    Ground One:  "Trial counsel was ineffective for not allowing Petitioner
to testify on his own behalf."

Petitioner alleges he wanted to testify on his own behalf, and he informed

defense counsel that he wished to do so, but counsel "failed to allow" him to testify

(ECF No. 1 at 5).[2]  In Petitioner's supporting memorandum, he elaborates on the

meaning of "failed to allow," and states that defense counsel advised him not to testify

"for a plethora or reasons," one of which was fear that the jury would learn of

Petitioner's prior felony conviction (ECF No. 1-1 at 1–4).  Petitioner alleges his

testimony was necessary, because there was no other way to present evidence of his

intent for entering the dwelling at issue, namely, to talk to Clerissa Jennings (the

---

[2] Page references to the parties' pleadings reflect the page numbers as enumerated in the
court's electronic docketing system rather than those the parties may have assigned.

victim of the battery) about infidelity issues in their relationship (*id.*).  Petitioner alleges he would have testified that upon entering the dwelling, he walked into a room and found Ms. Jennings engaged in sexual intercourse with another man (*id.*). Petitioner would have testified that Ms. Jennings locked herself in the bathroom, but then came out after Petitioner told her that he was there to talk and to "make things right" between them (*id.*).  Petitioner would have testified he and Ms. Jennings went to the kitchen, and he told her he was leaving her and would be back to collect his belongings (*id.*).  Petitioner acknowledges that Ms. Jennings testified that Petitioner's purpose for entering the dwelling was to talk to her, but Petitioner contends Ms. Jennings' testimony was "overshadowed" by defense counsel's focusing the defense on the fact that Petitioner lived at the dwelling and was thus legally authorized to enter (*id.*).  Petitioner contends defense counsel's advising him not to testify was erroneous and deficient (*id.*).

Respondent concedes Petitioner presented this claim to the state courts, and thus appears to have exhausted it (ECF No. 32 at 17).  Respondent contends the state court reasonably found, from the evidence adduced at the post-conviction evidentiary hearing, that defense counsel and the trial judge both informed Petitioner that testifying was his decision, and that defense counsel had reasonable misgivings about

Petitioner taking the stand and having to truthfully testify that he had been previously convicted of a felony (*id.* at 17–18).

Petitioner alleges in his reply that defense counsel did not inform him that the decision whether to testify was his (ECF No. 34 at 2). Petitioner further alleges defense counsel erroneously advised him that if the jury heard that he had previously been convicted of a felony, he would "lose" at trial (*id.* at 1–2).

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

The focus of inquiry under the performance prong of Strickland is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. Strickland, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir.

2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show "that every fair-minded jurist would conclude 'that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" Jones v. GDCP Warden, 753 F.3d 1171, 1184 (11th Cir. 2014) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," not that counsel's conduct more likely than not altered the outcome of the proceeding. *Id.* (citation omitted). And Petitioner must show that the likelihood of a different result is substantial, not just conceivable. Williamson v. Fla. Dep't of Corr., 805 F.3d 1009, 1016 (11th Cir. 2015) (citing Richter, 562 U.S. at 112). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. *Id.* at 694–95. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are

subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788. As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

### 2. Federal Review of State Court Decision

Petitioner presented this ineffective assistance of trial counsel ("IATC") claim as Ground One of his Rule 3.850 motion (Ex. I at 2–4). At the conclusion of the evidentiary hearing the state circuit court announced its findings of fact and

conclusions of law (*id.* at 70–77).  The court's reasons for rejecting Ground One were

the following:

> As to ground 1, counsel's advising the defendant not to testify, that's counsel giving her legal opinion.  The colloquy by the trial court beginning on page 164 of the transcript, starting at line 4, establishes that Mr. Kirksey was advised that it had to be his decision and his decision alone.  He understood that it was his decision.  The fact that he, of course, relied on Ms. Brown's legal advice, I mean, that's why he was appointed an attorney.  But the colloquy was sufficient in advising Mr. Kirksey that he had to make that decision on his own.  So it's not ineffective assistant [sic] of counsel to render a legal opinion.  You know, another attorney may differ as to that legal opinion.  It certainly isn't ineffective.  And it is prejudicial for it to come out that the defendant was a convicted felon at the time of this trial.  So that is not ineffective assistant [sic] of counsel.  So pursuant to <u>Strickland v. Washington</u>, the first prong has not been met.

(Ex. I at 70–71).  The First DCA affirmed the decision without written opinion (Ex.

M).

The state court record supports the state court's finding that Petitioner knew that

the decision to testify was his.  During trial, the court conducted the following

colloquy after defense counsel, Attorney Brown, announced that Petitioner did not

wish to testify:

> THE COURT:  Okay.  Let me just confirm that with you, Mr. Kirksey.  The decision of a defendant, whether he's going to testify, he or she is going to testify in a criminal trial, is one of the few decisions in a case that is up to you to make the final call on the decision.

> Of course, Ms. Brown's advice on it is important, but in the end it's up to you to decide whether you want to testify. Have you had enough time to discuss that decision with Ms. Brown?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And what's your decision on that?
>
> THE DEFENDANT: I'm not.

(Ex. C at 164).

At the post-conviction evidentiary hearing, Attorney Brown testified that she advised Petitioner that the decision as to whether he should testify was his (Petitioner's) (Ex. I at 33). Attorney Brown testified that the trial judge also told Petitioner that it was his decision as to whether to testify, and Petitioner told the judge he did not want to testify (*id.* at 52–53). Attorney Brown testified that she probably advised Petitioner that the fact that he was a convicted felon was not information that would benefit the defense (*id.* at 33–34).

Attorney Brown's advising Petitioner not to testify was reasonable. Petitioner concedes, and the trial transcript confirms, that the jury was presented with the information that Petitioner's testimony would have covered, specifically, that Petitioner entered the dwelling to talk to Clerissa Jennings about their relationship. Clerissa Jennings testified that when Petitioner entered the dwelling, he told her that

he only wanted to talk to her to "make things right" (Ex. B at 60, 73, 91).  Further,

Attorney Brown presented to the jury, in closing argument, that Petitioner's intent

when he entered the dwelling was to talk and "make things right" (Ex. C at 208–10,

215).  Therefore, the jury heard the substance of the testimony Petitioner would have

provided.  Additionally, if Petitioner had testified, the prosecutor would have asked

if he had previously been convicted of a felony, and Petitioner would have had to

truthfully admit that he had.  This would have undermined any persuasive value of

Petitioner's testimony.  It was not objectively unreasonable for the state court to

conclude that Petitioner made the final decision not to testify, and that Petitioner's

decision was not the result of deficient advice by Attorney Brown.

Petitioner failed to demonstrate that the state court's adjudication of Ground

One was contrary to or an unreasonable application of <u>Strickland,</u> or based upon an

unreasonable determination of fact. Therefore, Petitioner is not entitled to federal

habeas relief on Ground One.

B.    <u>Ground Two: "Counsel rendered ineffective assistance for not objecting to trial court's exclusion of battery as a lesser-included offense of Count One."</u>

Petitioner contends defense counsel was ineffective for failing to object to the

trial court's failure to include battery and trespass as lesser included offenses of the

charged offense of burglary with a battery and/or assault (ECF No. 1 at 7; ECF No. 1-1 at 5–6).

Respondent concedes Petitioner presented this claim to the state courts, and thus appears to have exhausted it (ECF No. 32 at 18). Respondent contends the state court reasonably concluded that Petitioner was not prejudiced by counsel's alleged error, because the jury found that Petitioner committed a battery, by virtue of the fact that the jury convicted him of the separately-charged battery (which the trial court subsequently set aside on double jeopardy grounds), and the jury convicted Petitioner of burglary with an assault or battery (*id.*). Additionally, the state court reasonably found as fact that trespass was included as a lesser-included offense of burglary in the jury instructions (*id.*).

      1.     Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Two of his Rule 3.850 motion (Ex. I at 4–5). The state circuit court adjudicated the claim as follows:

> As to ground 2, verdict form. A couple of things about the lesser included of battery. I'll note that Count 1 is a lengthy decision [sic]. First there's a question about the lesser of battery and the lesser of trespass. The verdict actually gave the jury an option to—there were

"A" through "G" options on the verdict form.  The defendant is guilty of the lesser charge of armed trespass.  The defendant is guilty of the lesser charge of trespass as to Count 1.

And then Count 3, the jury found the defendant guilty of battery. So the jury was instructed as to lessers.  They actually had the choice of not finding the defendant guilty of anything but a trespass without even a battery.  And the jury, after hearing the evidence, found the defendant guilty of burglary of a dwelling with a person battered and/or assaulted.

And then we, the jury, in Count 2, find the defendant guilty of battery.  And then the Count 2 was ultimately dismissed under double jeopardy, correct, Mr. Hutchins?

MR. HUTCHINS [for the State]:  Yes, your Honor.

THE COURT:  Okay.  So the jury was given an option to find not only the defendant not guilty of even a burglary but just of a simple trespass or not guilty, and the jury found the defendant guilty of the battery, which the court then dismissed as being subsumed in Count 1.

And this was a bifurcated trial so Count 2 was not before the jury during this portion.

So, again, if it was ineffective assistance of counsel to not request the lesser of battery, the second prong has not been satisfied under Strickland, meaning the prejudice.

(Ex. I at 71- 72).  The First DCA the decision without written opinion (Ex. M).

The record demonstrates that the jury was instructed that with regard to Count

I, burglary with a battery and/or assault, they had the option of finding Petitioner not

guilty of burglary with a battery and/or assault, but guilty of the lesser charge of

trespass (Ex. A at 53–55, 60–61, Ex. C at 176–79, 183–85). And the jury was instructed that they had the option of finding Petitioner not guilty of either burglary with a battery and/or assault, or trespass (*id.*). Additionally, the jury was instructed that they had the option of finding Petitioner guilty of simple battery, or not guilty of simple battery (*id.*). The jury found Petitioner guilty of burglary of a dwelling with a person battered and/or assaulted, and guilty of battery (Ex. A at 60–61).

The state court reasonably concluded that Petitioner failed to demonstrate a reasonable probability that the jury would have found him not guilty of burglary with a battery and/or assault if Attorney Brown had requested simple battery as a lesser included offense of burglary with a battery and/or assault. Petitioner is thus not entitled to federal habeas relief on Ground Two.

C.    Ground Three:  "Counsel rendered ineffective assistance for failing to object to trial court's jury instructions on the statory [sic] presumption set forth in Section 810.07(a) Florida Statutes."

Petitioner contends Attorney Brown should have objected to the jury instruction which instructed that the jury could infer that Petitioner had the intent to commit a crime inside the dwelling if Petitioner's entry was done stealthily and without the consent of the owner or occupant (ECF No. 1 at 8; ECF No. 1-1 at 6–7). Petitioner contends there was no evidence that he entered the dwelling without the owner or

occupant's consent, or that he entered the dwelling "stealthily" or in a furtive manner (*id.*). Petitioner contends the jury instruction regarding an inference of intent confused and misled the jury (*id.*).

Respondent concedes Petitioner presented this claim to the state courts, and thus appears to have exhausted it (ECF No. 32 at 18–19). Respondent contends the state court's adjudication of the claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law, nor did it derive from an unreasonable factual finding based on the state court record (*id.* at 19).

    1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

    2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Three in his Rule 3.850 motion (Ex. I at 6–7). The state circuit court adjudicated Petitioner's IATC claim as follows:

> Ground 3, the complaint that counsel did not ask for the Court to delete the language regarding stealthy entry. Actually, hindsight being 20/20, it shouldn't have been included, because it does more to confuse the jury, actually, and would work to the defendant's benefit.

> The burglary instructions are some of the more confusing and difficult jury instructions that we have to deal with. And that language in the jury instruction, let me find it right here, you may infer that Darryl Kirksey had the intent to commit a crime inside the structure if the

entering of the structure was done stealthfully [sic] and without the consent of the owner or occupant.

By leaving that language in there, it's actually more confusing for a jury, because they could interpret it that if it wasn't a stealthy entry, then you can't have a burglary.  I've actually had juries come back with that question, does it have to be a stealthy entry in order for it to be a burglary, because they're so confusing.

So while an appellate court may, could find, I guess, requesting not removing [sic] that ineffective, it certainly didn't prejudice the defendant.  It is the standard instruction so it certainly I don't believe is ineffective for the standard instruction to be the standard instruction.  Could ask for it to be taken out to make it clearer, but, if anything, it benefited [sic] the defendant to confuse the jury as to actually what he was being asked—they were being asked to decide.  So, again, I don't find that the prejudice prong—I don't find either prong has been met but certainly not the prejudice prong under this set of circumstances.

(Ex. I at 72–74).  The First DCA affirmed the decision without written opinion (Ex. M).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of Petitioner's claim.  Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *petition for cert. filed*, No. 16-6855 (U.S. Nov. 15, 2016).  Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that

decision using the test announced in <u>Richter</u>." <u>Wilson</u> at 1235. The <u>Richter</u> test

provides that "[w]here a state court's decision is unaccompanied by an explanation,"

a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable

basis for the state court to deny relief." <u>Richter</u>, 562 U.S. at 98. "[A] habeas court

must determine what arguments or theories supported or, as here, could have

supported, the state court's decision; and then it must ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of [the] Court." *Id.* at 102.

Here, under the <u>Richter</u> test, Petitioner must establish there was no reasonable

basis for the Florida First DCA to affirm the denial of relief on his IATC claim. In

reviewing the reasonableness of the First DCA's decision, this court may, but is not

required to, look to the reasoning of the state court below (the state circuit court). The

Eleventh Circuit explained in <u>Wilson</u>:

> When the reasoning of the state trial court was reasonable, there is
> necessarily at least one reasonable basis on which the state [appellate]
> court could have denied relief and our inquiry ends. In this way, federal
> courts can use previous opinions as evidence that the relevant state court
> decision under review is reasonable. But the relevant state court decision
> for federal habeas review remains the last adjudication on the merits, and
> federal courts are not limited to assessing the reasoning of the lower
> court.

834 F.3d at 1239.

The relevant portion of the jury instructions stated as follows:

> To prove the crime of Burglary, the State must prove the following three elements beyond a reasonable doubt:
>
> 1.    Darryl Kirksey entered a structure owned by or in the possession of Clerissa Jennings.
>
> 2.    At the time of entering the structure, Darryl Kirksey had the intent to commit battery, assault or some offense in that structure.
>
> 3.    Darryl Kirksey was not licensed or invited to enter the structure.
>
> If the license or invitation to enter was obtained by Darryl Kirksey's trick or fraud or deceit, then the license or invitation to enter was not valid.
>
> You may infer that Darryl Kirksey had the intent to commit a crime inside a structure if the entering of the structure was done stealthily and without the consent of the owner or occupant.
> . . . .
> The intent with which an act is done is an operation of the mind and, therefore, is not always capable of direct and positive proof. It may be established by circumstantial evidence like any other fact in a case.
>
> Even though an unlawful entering a structure is proved, if the evidence does not establish that it was done with the intent to commit battery, assault or some other offense, the defendant must be found not guilty of burglary.

(Ex. A at 50–51, Ex. C at 172–72).

The First DCA's decision could have been based upon the theory that Petitioner failed to demonstrate a reasonable probability the jury would have reached a different verdict if the instruction on the inference regarding intent (i.e., that they could infer intent to commit a crime from evidence of stealth and non-consensual entry) had been omitted.  Petitioner failed to show that the jury instruction misled the jury to believe that a burglary conviction was proper even if there was no evidence that convinced them, beyond a reasonable doubt, that Petitioner intended to commit a crime when he entered the dwelling.  Further, the jury could properly convict Petitioner of burglary so long as the evidence established that he unlawfully entered with the intent to commit a battery, assault, or some other crime, even if there was no evidence that he stealthily entered.

Petitioner failed to demonstrate that the state court unreasonably applied Strickland in rejecting his IATC claim.  Therefore, he is not entitled to relief on Ground Three.

> D.    Ground Four:  "Counsel rendered ineffective assistance for failing to move for judgment of acquittal at the end of State's case in chief on grounds of insufficient evidence to sustain conviction of burglary."

Petitioner contends Attorney Brown was ineffective for failing to move for a judgment of acquittal ("JOA") on the ground that there was no evidence he entered

the dwelling with intent to commit a crime (ECF No. 1 at 10; ECF No. 1-1 at 7–8).

Petitioner concedes that intent is a question for the jury, but he contends there was a

"great likelihood of success" if counsel had argued the intent issue in her motion for

JOA (ECF No. 34 at 4).

Respondent concedes Petitioner presented this claim in his Rule 3.850 motion

and thus appears to have exhausted it (ECF No. 32 at 19). Respondent contends the

state court's adjudication of the claim was not contrary to or an unreasonable

application of clearly established federal law, and did not derive from an unreasonable

factual finding based on the state court record (*id.*).

>   1.    Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

>   2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Four in his Rule 3.850 motion (Ex. I at

7–8). The state circuit court adjudicated Petitioner's IATC claim as follows:

>   JOA, ground 4, intent is an issue for the jury to decide. That is the
>   defendant's argument on intent. So it was a jury issue. The jury, in light
>   of all the testimony, found that the defendant formed an intent. In fact,
>   the instruction says the intent with which an act is done is an operation
>   of the mind and therefore is not always capable of direct and positive
>   proof. It may be established by circumstantial evidence, like any other
>   fact in the case, which is part of the burglary instruction.

> The jury was instructed properly on the burglary instruction and the jury chose to make a finding by its verdict that the defendant—that the State met all three prongs.  And by finding that, defendant committed a burglary, the jury found that Mr. Kirksey possessed the intent to commit the battery or assault or some offense in that structure when he entered—and that he wasn't invited or licensed to enter the structure.  So they made those findings.  It's not the court's purview to second-guess those findings.   They were properly instructed and it was their determination on the issue of intent.  And it would not be appropriate to argue that on a judgment of acquittal argument.

(Ex. I at 74).  The First DCA affirmed the decision without written opinion (Ex. M).

The trial transcript shows that at the conclusion of the State's case-in-chief, Attorney Brown made a motion for JOA, arguing that there was no evidence that Petitioner did not have a possessory interest (e.g., as a co-tenant) in the dwelling (Ex. B at 121–26).  At the post-conviction evidentiary hearing, Attorney Brown testified that she did not argue the intent issue in her motion for JOA, because the issue of intent was not an issue for the trial judge to determine in a motion for JOA; rather, it was an issue for the jury (Ex. I at 56–57).

When a defendant moves for JOA, the evidence and all reasonable inferences from the evidence are viewed in a light most favorable to the State.  *See* Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974); Ramos v. State, 89 So. 3d 1119, 1122 (Fla. 1st DCA 2012) (citation omitted).  A trial court should rarely, if ever, grant a motion for judgment of acquittal on the issue of intent, because proof of intent usually consists

of the surrounding circumstances of the case.  *See* <u>Washington v. State</u>, 737 So. 2d

1208, 1215–16 (Fla. 1st DCA 1999) (citation omitted).

As previously discussed, the intent element of Florida's burglary statute

requires proof that the defendant entered the structure with the intent to commit an

offense therein.  *See* Fla. Stat. § 810.02(b).  Here, the victim, Clerissa Jennings,

testified that Petitioner entered the dwelling by breaking the lock of the front door and

damaging the door frame (Ex. B at 59).  Ms. Jennings testified that upon Petitioner's

entering the dwelling, he immediately followed her into the kitchen, told her he

wanted to talk, put his arm around her neck to prevent her from leaving, and attempted

to hit her while she struggled to free herself (*id.* at 59–61).  This evidence was

sufficient for the trier of fact (which in this case was the jury) to conclude that the

intent element of the burglary statute was satisfied.  Therefore, Petitioner failed to

show a reasonable probability the trial court would have properly granted a motion for

JOA if Attorney Brown had argued the intent issue.

Petitioner failed to demonstrate that the state court's adjudication of his IATC

claim was an unreasonable application of <u>Strickland</u>.  Therefore, he is not entitled to

habeas relief on Ground Four.

    E.    <u>Ground Five: "Counsel rendered ineffective assistance for failing to ask</u>
<u>Clerissa Jennings about her criminal record or to investigate the case."</u>

Petitioner alleges he informed Attorney Brown that Clerissa Jennings had a criminal history, including "charges of dishonest" (ECF No. 1 at 12; ECF No. 1-1 at 9–10; ECF No. 34 at 5). Petitioner contends Brown was ineffective for failing to investigate Jennings' criminal history, and to inquire of Jennings, on cross-examination, whether she had any prior felony convictions (*id.*).

Respondent concedes Petitioner presented this claim in his Rule 3.850 motion and thus appears to have exhausted it (ECF No. 32 at 20). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law, and did not derive from an unreasonable factual finding based on the state court record (*id.*).

        1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

        2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Five in his Rule 3.850 motion (Ex. I at 8–9). The state circuit court determined that Attorney Brown "thoroughly" impeached Ms. Jennings, and although any prior convictions may have bolstered the impeachment, there was no reasonable probability the outcome of the trial would have

been different, in light of the testimony of the other witnesses (*id.* at 75). The First DCA affirmed the lower court's decision without written opinion (Ex. M).

At the post-conviction evidentiary hearing, Attorney Brown testified as follows with regard to this issue:

> Q [by Petitioner]. I told you about Ms. Jennings having an extensive criminal record, criminal history, and you didn't make no [sic] efforts to do an investigation to pull her record, no type of—nothing, like, to defy—to degrade her credibility and I advised you of that.
>
> A. The only charge or history that I knew that Ms.—Jennings, right?
>
> Q. Right.
>
> A. —had was a previous battery that you were the victim of.
>
> Q. Right.
>
> A. And a battery is a misdemeanor. We're not allowed to bring that up. Only felonies can be raised.
>
> Q. And she has felonies, I mean, and I wish I can [sic] I wish I could have pulled her record and I could have had it as evidence today to show the court, because she do [sic] has an extensive criminal history. And I know I advised you of that right before we proceeded to trial, that she had an extensive criminal history, and I wanted you to pull it, pull her record to use that in trial.
>
> A. Mr. Kirksey, you advised me of cable bills that were in your name—
>
> Q. Right.

A. —but in her apartment, telephones that were in your name but in her apartment. Everything that you advised me of I looked into. As a matter of fact, I think I've got five different subpoenas with Century Link and Comcast. And everything that you gave me I looked into.

Had I known or had it been intimated that she had an extensive criminal history, as you say today, I would have looked into that. I'm just now hearing that at this time. The only thing I knew of was what you told me, was that she had the battery charge in which you were the victim. You were charged out of that same set of incidents, and so I certainly didn't want to raise anything like that anyway, because I didn't want the door to be opened for her to be able to say what you did.

(Ex. I at 45–46). On cross-examination, Attorney Brown reiterated that Petitioner never told her that Clerissa Jennings had any felony convictions, and if Petitioner had done so, she would have investigated Ms. Jennings' criminal history (*id.* at 58).

The Florida Evidence Code provides that a party may attack the credibility of any witness by evidence that the witness has been convicted of a crime punishable by more than one year in prison, or a crime that involved dishonesty or a false statement regardless of the punishment. *See* Fla. Stat. § 90.610(1). Here, there is no evidence in the state court record that at the time of Petitioner's trial, Ms. Jennings had been convicted of a felony or a crime involving dishonesty or a false statement. In the absence of such evidence, Petitioner failed to demonstrate a reasonable probability that the result of his trial would have been different if Attorney Brown had investigated Clerissa Jennings' criminal history, or inquired of Ms. Jennings whether

she had any felony convictions or convictions involving dishonesty or false statements. The state court's denial of Petitioner's IATC claim was reasonable.

    F.    <u>Ground Six: "Counsel rendered ineffective for [sic] failing to impeach state witness Clerissa Jennings with prior inconsistent statements."</u>

Petitioner contends Attorney Brown was ineffective for failing to impeach Clerissa Jennings' trial testimony, that Petitioner did not live at the dwelling he allegedly burglarized, with audio recordings from the Leon County Jail, in which Jennings admitted that Petitioner lived at the dwelling (ECF No. 1 at 12; ECF No. 1-1 at 10–11).

Respondent concedes Petitioner presented this claim in his Rule 3.850 motion and thus appears to have exhausted it (ECF No. 32 at 20). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law, and did not derive from an unreasonable factual finding based on the state court record (*id.*).

    1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

    2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground Six in his Rule 3.850 motion (Ex. I at 9–10). The state circuit court adjudicated the claim as follows:

I would have to review the pages of the transcript to cite exact pages into the record, but Ms. Brown did attempt to and did impeach the witness through the use of her depositions, which she made contradictory statements.

It is questionable whether or not prior unsworn inconsistent statements may be introduced depending upon a number of evidentiary issues. The fact of the matter is that the victim was impeached, thoroughly impeached. . . . The fact that the defendant lived there, didn't live there. I mean, obviously, all of this was placed before the jury and the jury had to make a determination based on the instructions given and decide what the facts of the case were.
. . . .
What I'm finding is she [Attorney Brown] did a sufficient job of impeaching Ms. Jennings and it was a strategic—

MR. KIRKSEY: But how?

THE COURT: —decision on her part not to necessarily need [sic] to use those [the audio recordings] and that those would have been highly prejudicial to you to have those introduced.

MR. KIRKSEY: But I wanted them played. It's my trial and I felt like—

THE COURT: It's not your call on everything, sir. And I don't think that that, you've proven that that would have changed the outcome of the trial.

(Ex. I at 75–77). The First DCA affirmed the lower court's decision without written

opinion (Ex. M).

At the post-conviction evidentiary hearing, Petitioner described the content of

the recorded conversation as follows:

> [O]n the phone call, you know, me and her [Clerissa Jennings] was having a conversation where I was asking her why would she do me like this and knowing I'm a convicted felon and I had just got out of prison and why would she just lie on me like that. And she was basically, like, saying it was my house, you know.

(Ex. I at 49).

Attorney Brown testified that she spent two to three hours listening to the audio recordings of phone calls from the Leon County jail in order to find Petitioner's conversation with Ms. Jennings (Ex. I at 58). Attorney Brown testified that in deciding whether to use the audio recorded phone call to impeach Ms. Jennings, Brown had to weigh the incremental impeachment benefit of using the recording against the cost of the jury hearing Petitioner say on the recording that he was a convicted felon (Ex. I at 50, 60). Attorney Brown testified:

> What hurt the case was the law as it applies to the tenancy when there's a victim. So her saying on the tape that, yeah, you live here or, yes, it's your house really didn't help you when it came to the fact that the evidence showed that you were not on the lease, that Ms. Kitchen didn't even know you were living there prior to her being involved, Ms. Kitchen being the manager of the complex.

> The case law was was [sic] that if your tenancy if the victim's tenancy was superior to yours, then you could be convicted of burglary whether you lived there or not. And so the idea of your saying on a tape that I'm a convicted felon for the jury to hear and then to hear Ms. Kitchen—I'm sorry—Ms. Jennings admit, well, yes, you lived there, well, it was not—a matter that had to be weighed out.

(Ex. I at 50).  Attorney Brown explained that she chose to impeach Ms. Jennings'

testimony by pointing out clear inconsistencies between her trial testimony and her

pre-trial deposition testimony on several issues, including whether Petitioner was a

co-tenant of the dwelling (*id.* at 49–51).

Whether a particular decision by counsel was a tactical one is a question of

fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's

resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C.

§ 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v.

Zant, 941 F.2d 1449, 1462 (11th Cir. 1991).  Whether a particular tactical decision

was a reasonable one, however, is a question of law.  Hardwick, 320 F.3d at 1163;

Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462.  As previously discussed, in

determining whether counsel's decision was reasonable, "every effort [must] be made

to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective

at the time."  Strickland, 466 U.S. at 689.

The state court record supports the state court's factual finding that Attorney

Brown made a tactical decision not to use the audio recording as impeachment.

Further, that tactical decision was reasonable, in light of the fact that Attorney Brown

was able to impeach Ms. Jennings' testimony without using the audio recording (by questioning her about numerous inconsistencies between her trial testimony and her deposition testimony (Ex. B at 74–85)); and the fact that the audio recording included evidence that was not favorable to the defense (specifically, Petitioner's admission that he was a convicted felon).

The state court's conclusion, that Attorney Brown was not ineffective for failing to use the audio recording to impeach Clerissa Jennings, was not an unreasonable application of Strickland. Therefore, Petitioner is not entitled to habeas relief on Ground Six.

G.    Ground Seven: "Trial court erred in allowing a witness to testify about a court ordered no contact order."

Petitioner contends the trial court violated his due process rights by (1) allowing the prosecutor to ask a defense witness, Deion Kirksey, whether he knew that Ms. Jennings and Petitioner were court-ordered not to have any contact with each other, and (2) allowing the prosecutor to ask a State's witness, Susan Kitchens, whether she had previously told Petitioner not to return to the apartment complex (ECF No. 1 at 13; ECF No. 1-1 at 11–12). Petitioner alleges each witness responded "no" to the prosecutor's question (*id.*). Petitioner contends the prosecutor's questions permitted

the jury to hear evidence of his prior bad acts, which undermined the fairness of trial in violation of his due process rights (*id.*).

Respondent contends Petitioner failed to fairly present this claim on direct appeal of his conviction, which was the proper vehicle for doing so (ECF No. 32 at 20).  Respondent further contends a proper state court remedy is no longer available; therefore, the claim is procedurally defaulted for federal habeas purposes (*id.* at 21). Respondent additionally contends that, notwithstanding the failure to exhaust, the claim is without merit (*id.* at 21–22).

Petitioner contends he presented this claim on direct appeal (ECF No. 34 at 7).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan,

513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v.

Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in

which the habeas petitioner cited federal authority was by referring to a state court

decision in which "the defendant . . . asserted a broad federal due process right to jury

instructions that properly explain state law."  Anderson, 459 U.S. at 7.  The Court

expressed doubt that a defendant's citation to a state-court decision predicated solely

on state law was sufficient to fairly apprise a reviewing court of a potential federal

claim merely because the defendant in the cited case advanced a federal claim.  Id.,

459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was

obviously insufficient when the record satisfied the federal habeas court that the

federal claim asserted in the cited case was not the same as the federal claim on which

federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement

in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the

exhaustion requirement so as to mandate that, if state and federal constitutional law

overlap in their applicability to a petitioner's claim, the petitioner must raise his issue

in terms of the applicable federal right in state court in order to obtain federal review

of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim

_____

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had
raised only a state constitutional claim in his state appeal.  Presented with a state constitutional

that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." <u>Duncan</u>, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In <u>Baldwin</u>, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" <u>Id.</u>, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor
> indeed for petitioners seeking to establish exhaustion.  However, we

---

claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307

---

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

(11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). The federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.

Here, the state court record shows that on direct appeal, Petitioner argued that the trial court erred in admitting evidence of a non-existent no-contact court order, contrary to Florida Statutes § 90.403 (Ex. E at 7–9). Petitioner argued that admission

of the evidence contradicted Petitioner's theory of defense, that one cannot burglarize one's own residence, and constituted harmful error (*id.*).  Petitioner's substantive argument addressed Florida law.  He did not cite in conjunction with his claim a federal source of law on which he relied, nor did he label the claim "federal" or otherwise indicate a federal law basis for his claim. Petitioner made not even a passing reference to due process, fundamental fairness, a fair trial, federal law, or the United States Constitution.  Similarly, Petitioner did not cite a single federal case, and the state cases Petitioner cited did not cite to, or decide the claim on, federal grounds. Petitioner did not argue the federal due process standard: that the evidentiary ruling "so infused the trial with unfairness as to deny due process of law." Lisenba v. California, 314 U.S. 219, 228, 62 S. Ct. 280, 86 L. Ed. 166 (1941); *see also* Estelle v. McGuire, 502 U.S. 62, 75, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (reiterating the due process standard applicable to state-court evidentiary rulings). The state appellate court summarily affirmed Petitioner's judgment of conviction without explanation (Ex. G).

The undersigned concludes that Petitioner did not "fairly present" his federal due process claim in the state courts.  *Compare* McNair, 416 F.3d 1291 (holding that petitioner did not fairly present in state court his federal due process challenge to the

jury's consideration of extraneous evidence; explaining: "McNair never cited any United States Supreme Court or federal appellate court case dealing with extraneous evidence, nor did he mention the presumption of prejudice that arises under federal law when jurors consider such evidence. Instead, he relied on state law opinions to argue a state law claim under a state law standard, citing a lone federal district court opinion (which itself did not mention the federal presumption of prejudice) only as part of a string citation illustrating various courts' holdings with respect to extraneous evidence in the jury room."), *and* <u>Correll v. Sec'y, Dep't of Corr.</u>, 932 F. Supp. 2d 1257, 1274–75 (M.D. Fla. 2013) (holding that petitioner procedurally defaulted federal habeas claim regarding state trial court's admission of collateral crime evidence; on direct appeal, petitioner argued only that the evidence violated Florida's "<u>Williams</u> rule," and petitioner failed to alert the state court that admitting the testimony about the earlier incident violated a constitutional right), *and* <u>Link v. Tucker</u>, 870 F. Supp. 2d 1309, 1324 (N.D. Fla. 2012) (holding that petitioner procedurally defaulted federal habeas claim regarding state trial court's admission of witness's allegedly irrelevant testimony; on direct appeal, petitioner cited only Florida cases and no federal source of law in support of his claim of trial court error), *and* <u>Hartge v. McDonough</u>, 210 F. App'x 940, 943 (11th Cir. 2006) (unpublished)

(affirming district court's conclusion that petitioner failed to exhaust his federal due process claim by failing to fairly present it to the state court on direct appeal; petitioner's argument before the state appellate court, based upon Fla. Stat. § 90.403, was that the probative value of the evidence was substantially outweighed by its prejudicial effect; petitioner made a conclusory reference to the trial court error as the reason he did not receive a "fair trial," and he referred to a federal case, which he cited in support of the proposition that an evidentiary alternative must be considered in the § 90.403 balancing equation; however, petitioner's single reference to fair trial and citation to two federal cases, neither of which relied on federal constitutional law, was no more than the scattering of "some makeshift needles in the haystack of the state court record" (citing McNair)); *with* Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1295 (11th Cir. 2014) (holding that petitioner fairly presented in state court his claim that the trial court denied him the federal due process right to present a defense by excluding testimony of the victim's sisters, where on direct appeal petitioner averred he was entitled to introduce testimony under the Sixth Amendment and twice cited a relevant Supreme Court decision), *and* Kitchen v. Sec'y, Fla. Dep't of Corr., 571 F. App'x 930, 931 (11th Cir. 2014) (unpublished) (holding that petitioner fairly presented in state court his claim that inadequacies in the translation of the trial

proceeding violated federal due process, where petitioner's state court pleadings: (1) cited a federal case to establish that inadequacies in the translation of trial proceedings can violate federal due process if they render a trial "fundamentally unfair," (2) cited cases from states other then Florida, indicating he was not basing his claim solely on Florida law, and (3) cited a federal case in conjunction with his argument that the inadequate translation violated "the very foundation of due process and a fair trial as guaranteed by the United States Constitution.").

Petitioner is now barred by state procedural rules from returning to state court to present the federal constitutional nature of his claim.  *See* Hall v. State, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed abandoned."); Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").  As further relief is not available in the state courts, Petitioner's due process claim is considered procedurally defaulted.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir.

1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Here, Petitioner has made none of the requisite showings to excuse his procedural default.[5]  Petitioner's procedural default bars federal habeas review of Ground Seven.

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct.

---

[5] Even if Petitioner asserted ineffective assistance of appellate counsel ("IAAC") as cause for the procedural default (which he does not), the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts. Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989).  In Florida, a claim of ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken.  See Fla. R. App. P. 9.141(d); Davis v. State, 875 So. 2d 359, 372 (Fla. 2003).  Here, Petitioner did not present this specific claim of IAAC in his state habeas petition (see Ex. O).  Further, the limitations period set forth in Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure has expired.  Therefore, any such claim could not serve as cause for the procedural default of Ground Seven.

1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 6th day of March 2017.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control**.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.